UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
FAY WIGGINS,
                                 **FIRST AMENDED COMPLAINT**

                                 **17 cv 2072**

                                 **ECF Case (RMB) (GWG)**

                Plaintiff,

       vs.

The CITY OF NEW YORK,
NEW YORK CITY DETECTIVES
AMANDA LOPEZ, VINCENT KONG,
RAYMOND LOW, and NYPD SERGEANTS
DARRIEN KING, MILTON VALERIO, and
DETECTIVES JOHN DOES 1-5,                **JURY TRIAL DEMANDED**
in their individual and official capacities,

                Defendants.
-------------------------------------------------------------x

Plaintiff Fay Wiggins, by her attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.   This civil rights action arises from the illegal search, false arrest, denial of fair trial, and malicious prosecution of Fay Wiggins ("Plaintiff"), when a team of NYPD narcotics officers illegally raided Plaintiff's apartment and, finding nothing unlawful, fabricated evidence against her to justify their illegal intrusion.  Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for false arrest and imprisonment, illegal search, malicious prosecution, excessive force, denial of the right to a fair trial, and failure to intervene, and a *Monell* claim against the City of New York for the same constitutional violations.

Additionally, Plaintiff asserts analogous claims under New York Law against the individual defendants, and against the City of New York under the doctrine of *respondeat superior*. Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2.   This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.   Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4.   Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5.   Plaintiff respectfully demands a trial by jury on each and every one of her claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.    Plaintiff Fay Wiggins is a fifty-nine-year-old African-American woman, a United States citizen, and a resident of Manhattan.

7.     The individually named defendants Detective Amanda Lopez (Shield # 2241) ("Det. Lopez"), Detective Vincent Kong (Shield # 4149) ("Det. Kong"), Detective Raymond Low (Shield # 28922) ("Det. Low"), Sergeant Darrien King (Shield # 2617) ("Sgt. King"), and Sergeant Milton Valerio (Shield 692) ("Sgt. Valerio"), and Detectives John Does 1-5 (collectively, the "individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

8.     On the date of the incident giving rise to this complaint, the individual defendants were assigned to the Narcotics Borough Manhattan North.

9.     Each individual defendant is sued in his individual and official capacity.  At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

10.     Defendant City is a municipality created and authorized under the laws of New York State.  It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

11.     Plaintiff served a Notice of Claim on the Comptroller of the City of New York within ninety days of the incident, being assigned Claim # 2016PI022123.  At least 90 days have elapsed since the service of the Notice of Claim, and adjustment and payment has been neglected or refused.

12.     The City of New York demanded a hearing pursuant to General Municipal Law § 50-h, which hearing was held on January 11, 2017.

13.    This action has been commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

**The Apartment**

14.    Plaintiff lives by herself in a small apartment (the "Apartment") on the sixth floor of 209 East 118th Street, in Harlem, New York City.

15.    Plaintiff shares a bathroom with another woman on the sixth floor and a kitchen with four other women on the sixth floor.

**Officers Go to the Apartment Under False Pretenses**

16.    On or around January 15, 2016, Plaintiff was in her Apartment, doing nothing unlawful or suspicious, when she heard two NYPD officers, including Det. Lopez, knock on her door and ask if she called the police in need of help.

17.    Plaintiff denied doing so, as did her other sixth floor neighbors, on whose doors the officers also knocked.

18.    A short while later, the two officers left.

19.    Upon information and belief, the officers were not responding to any call for help but were there to scope out Plaintiff's Apartment and the surrounding units.

20.    During their visit, the officers observed nothing suspicious or wrongful.

**Execution of Search Warrant**

21.    Early in the morning on January 22, 2016, Plaintiff was sleeping in her Apartment.

22.    Meanwhile, a group of Narcotics Detectives, including Det. Lopez, prepared to execute a search warrant in Plaintiff's Apartment.

23.     At approximately 6:00 a.m., Plaintiff was startled awake by a group of plain-clothes NYPD detectives – the individual defendants:  Det. Lopez, Det. Kong, Det. Low, Sgt. King, Sgt. Valerio, and John Does 1-5 – surrounding her bed.

24.     Det. Lopez placed a few small baggies apparently containing crack cocaine on top of Plaintiff's dresser and asked if the drugs belonged to Plaintiff.

25.     Plaintiff truthfully and credibly denied possessing any drugs, and asked why the officers were in her bedroom.

26.     Without giving any explanation for their presence, the detectives told Plaintiff to get dressed.

27.     Det. Lopez asked Plaintiff to reveal the "other drugs" in her room.

28.     Plaintiff replied that the only drugs she had were the ones the officers brought with them.

29.     Det. Lopez then said, "We have a smart ass on our hands."

30.     After Plaintiff got dressed, she was taken to the common kitchen and tightly handcuffed behind her back.

31.     Plaintiff complained about the tightness of the handcuffs, which were cutting into her wrists, but the individual defendants ignored her complaints and did nothing to alleviate her pain.

32.     As Plaintiff sat handcuffed in the kitchen, Det. Lopez and other individual defendants thoroughly searched through Plaintiff's belongings in her bedroom.

33.     The individual defendants also searched Plaintiff's bathroom and her designated kitchen cabinet.  Nothing unlawful or suspicious was found in those places.

34.     The search of the Apartment took approximately one hour to complete.

35.     At no point during the search of the Apartment were any drugs or any other unlawful things found anywhere, revealing the utter failure and baselessness of the Search Warrant.

36.     After the individual defendants finished searching the Apartment, they took Plaintiff in handcuffs to the NYPD van (the "Van").

**The Van**

37.     Plaintiff was confined to the Van rear-cuffed for several hours before being taken to a police precinct.

38.     As the Van was being driven, Plaintiff was in such pain from the handcuffs, claustrophobic and distraught, that she screamed for help, but the officers in the Van ignored her.

39.     Plaintiff was placed on a low bench in the Van.

40.     Plaintiff was not secured in the Van – she was neither strapped with a seat belt or any other device to keep her in place.

41.     As the Van was being driven in a rough manner, Plaintiff fell several times to the floor, unable to keep her balance.

42.     Eventually, a male arrestee was placed in the back of the Van with Plaintiff.

**The Precinct**

43.     At the precinct, Plaintiff was booked and processed, fingerprinted and photographed, thoroughly searched and detained in a holding cell.

44.     Having found nothing unlawful on Plaintiff or in her Apartment, the individual defendants concocted the story that they recovered crack cocaine from Plaintiff's bedroom dresser.

45.     Det. Lopez conveyed this fabricated account to the New York County District Attorney's Office (the "DA").

46.     Because the arrest of Plaintiff took place in the midst of a massive snowstorm, it took around three days before Plaintiff was finally arraigned.

**The Prosecution**

47.     On or around January 25, 2016, Plaintiff was arraigned in New York County Criminal Court on Docket Number 2016NY006159, charged with NY Penal Law Section 220.16(1), Criminal Possession of a Controlled Substance in the Third Degree (a class B felony), and Penal Law Section 220.50(2), Criminally Using Drug Paraphernalia in the Second Degree (a class A misdemeanor).

48.     The Criminal Court Complaint, which was sworn to by Det. Lopez, stated: "During the execution of a search warrant, I [Det. Lopez] recovered six bags of crack cocaine from the defendant's [Plaintiff's] dresser drawer.  The defendant was laying [sic] in the bed of the same bedroom when I walked in.  I recovered two bags of zip lock baggies suitable for the packaging of narcotics in the dresser drawer."

49.     Hearing the DA's fabrication-based case against Plaintiff, the Criminal Court Judge set bail in the amount of $500.

50.     Unable to post bail, Plaintiff remained detained and was transported to Rikers Island, where she remained for another two days.

51.     In Criminal Court on or around January 28, 2016, under NY Criminal Procedure Law Section 180.80, Plaintiff was released from custody because the DA had failed to present the case against her to the grand jury and thus could not procure an indictment.

52.    Plaintiff was ordered to return to Criminal Court on about two more occasions.

53.    On June 15, 2016, the DA dismissed all charges against Plaintiff.

**NYPD's Culture of Mendacity**

54.    The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

55.    There is a systemic failure by the City to identify, discipline, and supervise NYPD officers who fabricate criminal charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

56.    The NYPD's flaccid response to lying officers – particularly in the context of filing false charges – constitutes a destructive custom and policy that fosters a culture of mendacity in the NYPD.

57.    The City has recognized the obvious and significant problem of police officers fabricating criminal charges, but there is no serious mechanism in place by which to curb such conduct or weed out dishonest officers.

58.    The NYPD has no internal programs – not even rudimentary statistical software – that enable it to assess whether a particular Officer or Detective has an unusually high number of allegations of making false statements.

59.    Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve.

60.    But NYPD officers usually face only minor discipline or no discipline

whatsoever for making false statement on court documents.

61.    The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents.  Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

62.    In 1995, by Executive Order No. 18, Defendant City's Mayor created the Commission to Combat Police Corruption (the "Commission") to monitor and evaluate the NYPD's anti-corruption activities.  The Commission fulfills its mandate to monitor the NYPD's performance by reviewing the investigations of the Internal Affairs Bureau ("IAB"), and presenting its findings in its Annual Report.

63.    Since its inception, the Commission has emphasized the importance of appropriately disciplining officers who make false statements.  On the basis of the Commission's recommendations, the NYPD has adopted a False Statement Policy (*see* NYPD Patrol Guide Section 203-08) that mandates termination of officers who intentionally make false official statements regarding a material matter, unless exceptional circumstances exist.

64.    As the Commission stated in its 2013 Annual Report, "Consistent application of the false statement policy is of utmost importance.  It not only enables members of the service to know what they can expect if they make false statements, but it also sends a clear message to members of the service, as well as the public, that the Department will not tolerate such conduct" (pg. 74).

65.    The Commission analyzes false statements in official criminal court documents, including supporting depositions, criminal court complaints, summonses, and

affidavits.  False statements in such documents are of paramount importance because they have the potential to unjustly deprive citizens of their civil liberties and to destroy the lives of innocent people.

66.     Despite the importance of appropriately identifying and punishing officers who make false statements, the NYPD rarely imposes discipline consistent with its stated policy of terminating officers.

67.     Indeed, the gap between its practice and policy is so wide as to make the NYPD's False Statement Policy a sham.

68.     For example, in the 2014 Annual Report, the Commission examined ten cases involving false statements in sworn court documents; in seven of those cases, the subject officers were found guilty but not separated from the police department.

69.     Such findings – which expose the gap between the NYPD's False Statement Policy and practice – can be found in virtually every Annual Report issued by the Commission.

70.     Over the past ten years, in its Annual Reports, the Commission has analyzed numerous forms of false statements and has consistently found that the NYPD "fail[s] to follow its false statement policy; "fail[s] to charge the subject officer with making a false statement although such a charge appear[s] appropriate"; levies "other similar charges…to avoid the imposition of the False Statement Policy's requirement of termination"; and creatively skirts the requirement of termination without justification. And there is no sign of improvement.

71.     In the specific context of fabricated court documents that falsely accuse people of wrongdoing, the Commission has regularly found grossly inadequate

punishments, resulting in guilty officers forfeiting vacation days (usually no more than 30 days) but rarely losing their jobs.

72.     To make matters worse, the instances of false statements analyzed by the Commission is a small fraction of the total instances of false statements that occur within the NYPD.

73.     In the 2010 Annual Report, for instance, the Commission identified only ten IAB cases that included allegations of making an official false statement.

74.     The officers who were caught fabricating statements were unlucky – they were captured on videotape, a civilian reported them, their lies were unwittingly exposed – but most dishonest police officers know they can lie and get away with it.

75.     The number of false statement cases investigated by the IAB in the specific context of court documents is a very small portion of the actual number of instances of material fabrication in court documents.

76.     Defendant City has turned a blind eye to the tens of thousands of criminal cases which are dismissed each year in the Criminal and Supreme Courts of Defendant City; has failed to study how many of those dismissals were due to baseless, fabricated charges; and has failed to proactively look for patterns of fabrication and identify charges that should have never been brought.

77.     Defendant City has no system by which to proactively identify mendacious officers.  It waits for civilians to bring such officers to its attention.

78.     In the ten years prior to January 22, 2016, the number of NYPD investigations into police officers making false statements on criminal court accusatory instruments that did not arise from civilian complaints was *zero*.

79.     In a criminal justice system where numbers and statistics have become paramount, the inadequacy of the NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that protect innocent citizens from being wrongfully arrested and charged.

80.     Because arrests are rewarded, while making false arrests and fabricating charges go largely unpunished, police officers have felt incentivized to engage in false arrests and to fabricate criminal charges.

81.     Such perverse incentives become particularly destructive in the hands of dishonest, undisciplined, unsupervised officers.

82.     Through the data cited herein along with public events (e.g. numerous civil rights lawsuits alleging fabrication every year, ticket-fixing scandals, evidence of an illegal quota system, to name a few) and other information in its possession, the policymakers of Defendant City have been aware of the NYPD's practice of insufficiently punishing – and thereby encouraging – the filing of fabricated criminal charges.

83.     By doing nothing about this practice, the City has demonstrated deliberate indifference to the rights of its citizens.

84.     Unfortunately, under Mayor Bill de Blasio's administration, the NYPD seems more empowered than ever to thumb its nose at the False Statement Policy.

85.     In its 2015 Report, the Commission found that the Department rarely brought charges under the False Statement provision.  "Instead," the Commission writes, "the

Department used other Patrol Guide sections to allege misconduct relating to false statements" (pg. 103), sections which do not carry a presumption of termination.

86.     The notion of police officers lying, cheating, fabricating, manipulating, and misleading has become so accepted and commonplace within the NYPD that the pursuit of justice, which is rooted in truth and fact, has become subverted and degraded.

87.     While the vast majority of police officers are decent people, they must operate in a police culture so truth-sick and cynical that their morale is crushed.

88.     NYPD officers see firsthand how roguish behavior is rewarded, trust thwarted, and virtue perverted within their ranks.  The negative incentives created by this sick culture threaten the safety, welfare, and liberty of every citizen.

**Damages**

89.     As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

        a.   Violation of her constitutional rights under the Fourth Amendment to the United States Constitution;

        b.   Severe emotional trauma, distress, degradation, and suffering.

**SECTION 1983 CLAIMS**

**FIRST CLAIM**

**Deprivation of Federal Civil Rights Under Section 1983**

90.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

91.     All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

92.     All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

93.     The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

94.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### Illegal Search Under Section 1983

95.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

96.     By the actions described, the Defendants deprived Plaintiff of her Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically her right to be free from unlawful searches.

97.     Based on a false search warrant application, the individual defendants obtained a search warrant and searched Plaintiff's Apartment, where Plaintiff had an expectation of privacy.

98.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### False Arrest Under Section 1983

99.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

100.    By the actions described above, Defendants deprived Plaintiff of her federal civil rights, including her Fourth Amendment right to be secure in her person against unreasonable searches and seizures, specifically her right to be free from false arrest.

101.    As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

102.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Malicious Prosecution Under Section 1983

103.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

104.    By the actions described, the Defendants deprived Plaintiff of her Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically her right to be free from malicious prosecution.

105.    Without probable cause, the individual defendants directly and actively initiated a criminal proceeding against Plaintiff, creating a fraudulent theory of guilt.

106.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Excessive Force Under Section 1983

107.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

108.     By the actions described, the individual defendants deprived Plaintiff of her Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically her right to be free from excessive and unreasonable force.

109.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SIXTH CLAIM

### Denial of the Right to a Fair Trial

110.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein

111.     By the actions described, the Defendants deprived Plaintiff of her constitutional right to a fair trial.

112.     The individual defendants fabricated allegations likely to influence a jury's decision and forwarded that information to the Manhattan District Attorney's Office.

113.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SEVENTH CLAIM

### Failure to Intervene Under Section 1983

114.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

115.     Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights by other law enforcement officers.

116.     The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of her constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

117.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SIXTH CLAIM

### Municipal Liability Under Section 1983

118.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

119.     By the actions described, the Defendant City deprived Plaintiff of her Constitutional rights through its failure to train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

120.     As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged.

## PENDENT STATE CLAIMS

## FIRST CLAIM

### False Imprisonment under N.Y. State Law

121.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

122.     The individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, and without privilege or consent.

123.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### Malicious Prosecution Under N.Y. State Law

124.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

125.     As detailed above, the individual defendants intentionally and with actual malice initiated a felony prosecution against Plaintiff without probable cause.  The prosecution terminated in Plaintiff's favor when all charges against her were dismissed.

126.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Unreasonable Search and Seizure Under New York State Constitution Art. I § 12

127.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

128.     Article 1, Section 12, of the New York State Constitution declares the right to be free from unreasonable searches and seizures.

129.     Without probable cause and without Plaintiff's consent, the individual defendants arrested Plaintiff, searched her person and home, confined her, and initiated false charges against her.

130.     As a direct and proximate result of the misconduct and abuse of authority

detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Battery Under N.Y. State Law

131.     Plaintiff realleges and reiterates all allegations set forth in the preceding

paragraphs as if stated fully herein.

132.     As detailed above, the individual defendants intentionally touched Plaintiff in

an offensive and harmful manner, and they intentionally subjected her to offensive and

harmful contact.

133.     As a direct and proximate result, Plaintiff sustained the damages and injuries

hereinbefore alleged.

## FIFTH CLAIM

### Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law
### (Against Defendant City of New York)

134.     Plaintiff realleges and reiterates all allegations set forth in the preceding

paragraphs as if stated fully herein.

135.     Defendant City owed a duty of care to Plaintiff to prevent the unlawful search,

false arrest, malicious prosecution, and mental and emotional abuse sustained by

Plaintiff.

136.     Upon information and belief, all of the individual defendants were unfit and

incompetent for their positions.

137.     Defendant City knew or should have known through the exercise of

reasonable diligence that the individual defendants could potentially cause harm.

138.     Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

139.     As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

## SIXTH CLAIM

### Respondeat Superior Under N.Y. State Law

140.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

141.     Defendant City is the employer of the individual defendants.

142.     Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment.

143.     As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

a.     An order awarding compensatory damages for Plaintiff Fay Wiggins in an amount to be determined at trial;

b.     An order awarding punitive damages in an amount to be determined at trial;

c.     A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

d.     Such other and further relief as this Court may deem appropriate.

DATED:      August 6, 2017                    _____s/_____
            New York, New York                CYRUS JOUBIN, ESQ.
                                              43 West 43rd Street, Suite 119
                                              New York, NY 10036
                                              (703) 851-2467
                                              joubinlaw@gmail.com
                                              Attorney for Fay Wiggins